TUCKER, Plaintiff in Error, v. TUCKER *et al.*, Defendants in Error.

1. A deed of gift of slaves made by a husband in anticipation of death and with a view to defraud his widow of her dower in such slaves will be held void as against the widow.
2. Where a person, in anticipation of death, and with a view to defraud his widow of her dower, executes, as part of the same transaction, separate deeds of gift of slaves to his children, a petition in a suit instituted by the widow against all the grantees in said deeds to obtain an annulment thereof and an assignment of dower will not be bad for multifariousness because the defendants have separate and distinct interests under the deeds.

*Error to Cooper Circuit Court.*

The facts sufficiently appear in the opinion of the court.

*Douglass & Hayden*, for plaintiff in error.

I. The demurrer should have been overruled. The petition is not multifarious. (Sto. Eq. Pl. § 285, 286, 531, 540; Adams Eq. 309, 310; Brinkerhoff v. Brown, 6 Johns. Ch. 368; Bigbee v. Sargent, 23 Maine, 269; Dimmoch v. Bixley, 20 Pick. 368; Curtis v. Tyler, 9 Paige, 432; Gaines v. Chew, 2 How. 619; Oliver v. Pratt, 3 How. 411; 4 Mo. 116; Bray v. Thatcher, 28 Mo. 129; Martin v. Martin, 13 Mo. 36.)

II. The petition states facts sufficient to constitute a cause of action. They bring this case within the principle decided by the cases of Davis v. Davis, 5 Mo. 183, and Stone v. Stone, 18 Mo. 389. See Lightfoot's Exec'rs v. Colgan & wife, 5 Munf. 558.

*Adams, Stephens & Vest*, for defendants in error.

I. At common law and under our statute dower attaches to land during coverture. Our statute only endows the widow of personalty belonging to the husband at the death. Any disposition made during the life of the husband will defeat dower. (16 Mo. 250; R. C. 1855, p. 668.) The term dower properly only applies to real estate. The marriage vests the wife with no interest in her husband's per-

sonalty. The statute giving her dower in personalty only applies to that remaining undisposed of at the time of his death. It is not the intent of the law to abridge in any way the right of the husband to dispose of his personalty by any disposition to take effect irrevocably during his lifetime. She has no interest inchoate or otherwise. The widow can only question such acts and conveyances of her husband as do not pass his estate away from him in his lifetime, such as are made *in extremis* and such as might be set aside on the ground of imbecility and are in effect wills in disguise. It is upon this ground that the cases of Davis v. Davis and Stone v. Stone were decided. The allegations of the petition do not bring this case within the rule referred to. She merely alleges that these deeds were made in anticipation of death and to defraud her of her rights. It is not alleged that they were made *in extremis* or in *immediate* anticipation of death, and are wills in disguise. They were made fifteen months or more before death. When does the husband's right to dispose of his property cease?

II. The petition is multifarious. The demurrer was properly sustained. (See R. C. 1855, p. 1228; 20 Mo. 234; 26 Mo. 72; 17 Mo. 231; 11 Mo. 269; Sto. Eq. Pl. § 271; 16 Mo. 251.)

EWING, Judge, delivered the opinion of the court.

There are two questions in this case: first, does the petition show a cause of action; second, is it objectionable for multifariousness?

It appears from the petition that the decedent, Alexander Tucker, died in June, 1859, leaving the plaintiff Sarah Tucker his widow, Benjamin H. and William H. Tucker his two sons, and three grand-children, the issue of a deceased daughter, who are minors; that the decedent on the 7th of April, 1858, being possessed and legal owner of certain slaves, ten in number, by his deed of gift of said date, with the view and for the intent and purpose fraudulently to deprive and defeat the plaintiff of her right of dower in and to

said slaves, conveyed five of them, which are named, to the defendant W. H. Tucker, as trustee, in trust for the use of his three grand-children, who are also made defendants— said intestate reserving to himself a life estate in said slaves, and retaining the possession, use and service thereof; that by another deed of gift, of the same date, for the purpose aforesaid, said decedent fraudulently conveyed to the defendants Benjamin H. and William H. Tucker, three of said slaves, reserving the possession, use and services thereof for and during his life; and that by a certain other deed dated January 5, 1858, the intestate conveyed to the plaintiff, to be enjoyed by her after the death of said intestate, with remainder in fee to the defendants, one of said slaves, reserving to him, the said intestate, the use of said slave during his life. The petition further alleges that, at the time of the execution of said deeds of gift, said intestate was, and long prior to that time had been, in a feeble and declining state of health, and was weak both in body and mind, and that said deeds were made by him in expectation and in anticipation of death and for the purpose aforesaid of depriving and defeating plaintiff of her right of dower in said slaves; that defendants colluded with the intestate, and exercised an undue influence and control over him, and induced him to make the deeds for the purpose stated.

It is conceded that in this state the husband has no power by will to deprive the widow of her dower in personal estate, no more than in real estate; and it is equally clear and well settled, since the decision in the case of Davis v. Davis, 5 Mo. 189, that the sense and intent of the statute on this subject applies not only to *wills* technically, but also to deeds if made with the intent to defeat the widow's dower; that if made for this purpose, the mere form or name of the instrument by which it is attempted is immaterial, and all such deeds are void as being in fraud of the widow's rights under the statute.

But although the husband is not permitted to deprive his wife of her dower in his personal estate by will, he has the

undoubted right to alienate this kind of property during his life, without his wife's concurrence and disburdened from any claim of hers, if made *bona fide* and not as a device by which to retain the use and possession during life and at his death to place it beyond the reach of his widow. But if the transaction be merely colorable, or be accompanied with circumstances evincing fraud, the disposition will be void against her. In Hall v. Hall, 2 Vern. 276, the court said, if the goods are given absolutely by a freeman in his lifetime, they will stand good against the custom, under which the wife claimed; but if he has it in his power, as by the keeping of the deed, &c., or if he retains the possession of the goods or any part of them, this will be a fraud upon the custom. Keeping the deed in the husband's hands or retaining possession of the property after assignment, are marks of fraud. (Smith v. Fellows, 2 Atk. 62.) The reservation of a life interest in property assigned by deed is held to be evidence that the gift is in effect testamentary, and therefore a fraud upon the custom. (2 Ver. 612, 685.) Roper, in his work on Husband and Wife (2 vol. p. 17), states his conclusion on this subject to be, that if the act be accompanied with the delivery of the property, and every thing is done, so far as it can be, before the husband's death, to give effect to the transaction, and there is no reservation, and the husband divests himself of all interest in the property, then the act will be necessarily valid as a due exercise of his admitted right, whilst life remained, to dispose of his property in bar of the custom. The facts of this case as averred in the petition, we think, bring it within the influence of the principle laid down in Davis v. Davis, *supra*, and Stone v. Stone, 18 Mo. 389.

Though the instrument in the case before us is (like those in the cases just cited) in form a deed, and not technically a will, yet its execution was accompanied with such circumstances as evince a fraudulent intent, and are sufficient, if proved as they are alleged in the petition, to invalidate it. It has such characteristics of a testamentary

disposition as to bring it as effectually within the prohibition of the statute as if it had all the technical requisites of a will. If the intent and effect of the deed are the same, the mere form or mode of accomplishing it is immaterial. The petition shows that the deeds were voluntary; that they were made in expectation and anticipation of death, when the decedent was in feeble and declining health; that the slaves, some nine in number, were conveyed to the defendants, who are his children and grand-children, reserving however to himself during his life the use and possession thereof; that one other slave was conveyed to plaintiff to be enjoyed after decedent's death, with remainder in fee to the defendants, but retaining in like manner the possession of this one also during his life. These conveyances are alleged to have been made to defraud the widow of her dower, and to have been the result of collusion between decedent and the defendants, and of undue influence exercised by them over him. And of the sufficiency of the facts alleged in the petition to constitute a cause of action, we entertain no doubt.

The objection that the petition is multifarious we think is not well taken. Although there are several deeds, and the property is claimed by the parties defendants under different instruments, and may to that extent be considered distinct transactions, yet they are transactions connected with the same general subject matter and subject of action, and therefore come within requirement of the statute. (R. C. 1855, p. ——, art. 6, § 2.) There is one general right in the plaintiff, and the claim of the defendants to the property in controversy is so far identified, that if the claim of one is invalid, the claim of all is likewise invalid. The defendants are all alike concerned in sustaining the deeds conveying the property and defeating the plaintiff's action. It is true the property is held under distinct conveyances, but the gravamen of fraud equally applies to all of them. If one of the conveyances is fraudulent, all are fraudulent, and all the property thereby conveyed is affected by the plaintiff's claim of dower.

Tucker v. Tucker.

The principle of allowing a plaintiff to bring many defendants before the court is that he claims one common right against all, and therefore the court allows him to bring all persons disputing that right before the court in one bill. (11 Mo. 270.) It is said a bill is objectionable for multifariousness when different matters having no connection with each other are joined in a bill against several defendants, a part of whom have no interest in or connection with some of the distinct matters for which the suit is brought, so that such defendants are put to the unnecessary trouble and expense of answering and litigating matters stated in the bill in which they are not interested and with which they have no connection. (3 Barb. Ch. 432.) The objection of multifariousness is confined to cases where the cause of each defendant is entirely distinct and separate in its subject matter from that of his cofendants. A bill is not demurrable where one general right is claimed by the plaintiff, although the defendants may have separate and distinct rights. (20 Pick. 368; 3 Iredell Eq. 611.) In Brinkerhoff v. Brown, 6 John. Ch. 156, the leading cases are reviewed and the subject discussed at length by Chancellor Kent, who says that the principle to be deduced from the cases is that a bill against several persons must relate to matters of the same nature and having a connection with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general subject of the case may be distinct. In Whaley v. Dawson, 2 Sch. & Lef. 367, the rule was declared to be that where there was a general right covering the whole case, the demurrer would not be allowed, though the defendants had separate and distinct rights. (See also to the same effect, Curtis v. Tyler, 5 Paige, 434; Bray v. Thatcher, 28 Mo. 129.)

The judgment will be reversed and the cause remanded; the other judges concurring.