## FERGUSON vs. PASCHALL, ET AL.

1. A, by a covenant, transfers shares of stock in different Insurance Companies to B. After such transfer the shares are sold under execution against A, and purchased by different persons. A bill filed against the several Companies and the purchasers of the stock, to compel a transfer on the books of the companies to B, is multifarious.    *2.9 - 3 5 5*

## APPEAL from St. Louis Circuit Court.

### *Statement of the Case.*

William Taylor and Alexander Ferguson filed their original bill in the St. Louis Circuit Court, setting forth that Nathaniel Paschall on the 4th November 1839, made to Wm. Taylor his note for $1500 payable sixty days after date—that this money belonged to Taylor & Ferguson jointly, and the note was their joint property. That to secure the payment of said note, Paschall delivered to Taylor & Ferguson a certificate for ten shares of the capital stock of the St. Louis Insurance Company, on each share of which $59 had been paid—also a certificate for thirty shares of the St. Louis Floating Dock & Insurance Company, on which six hundred and thirty dollars had been paid; and also a certificate for ten shares of the stock of the St. Louis Perpetual Insurance Company, on each which shares, one hundred dollars had then been paid. That at the same time Paschall executed his covenant in writing and under seal to said Taylor, (which also enured to the joint use of Taylor & Ferguson) of even date, covenanting that if he did not pay the note above described at maturity, the stock should absolutely belong to said Taylor—and also covenanting in such case to make a transfer of said stock on the books of the several Insurance Companies to said Taylor, in the form, &c., prescribed by the charter and bye-laws of the several Companies, which transfers should be in full satisfaction of said note. The note was not paid at maturity, and was at

Paschall's request several times renewed to Taylor & Ferguson jointly, and a very small payment was made in May, 1840, amounting to $134,70.

On the 25th January, 1840, Taylor & Ferguson advanced to Paschall fifteen hundred dollars more, for which he also executed his note to them at sixty days, and also placed in their hands to secure the payment of the same the folowing certificates of stock: A certificate for twenty shares of the stock of the St. Louis Gas Light Company, on which $600 had been paid—ten shares of the Planters' House and Insurance Company of St. Louis, on each share of which, $100 had been paid in,—and five shares of the St. Louis Theatre. Together with all these, Paschall executed another covenant to Taylor & Ferguson, stipulating that in case the last mentioned note was not paid at maturity, the said Paschall would transfer in satisfaction thereof, upon the books of the several Companies, according to the bye-laws and charters thereof, the last mentioned stock to the said Taylor & Ferguson. That the note was unpaid at maturity, and at Paschall's request renewed on the 28th March, 1840, for sixty days. Exhibits are made of the notes, covenants and certificates mentioned in the bill. That according to the charter and bye-laws of the several Companies, the transfer of the stock on the books of the Companies is necessary to the passing of the legal title. That default was made in the payment of the notes. That Taylor & Ferguson are ready and willing, &c., to surrender the said notes, and that they offered to said Paschall to do so, and requested him to transfer the stock according to his covenants, and that he has failed to do so. That Taylor & Ferguson were, and are the equitable owners of the several shares of stock. That Paschall is insolvent. That after the delivery to Taylor & Ferguson of the certificates of s.ock above mentioned, and the making of the covenants to transfer the same on the books of the Company, several executions were issued against Paschall; one in favor of James R. McDonald, and another in favor of Benoist & Hackney, and others in favor of other plaintiffs, which were levied on the several shares of stock, as the property of Paschall, and under them the stock was sold to several persons, all of whom were made parties to the bill. That before the stocks or any of them were sold the complainants gave notice to each of the several Companies of the transfer of the certificates and the covenant of the transfer of the stock itself, by said Paschall to them, and that at the sales by the Sheriff aforesaid they gave notice to all persons of the premises, and all the foregoing facts were known to the purchasers of said stocks; and that the said stock has since been transferred by the purchasers to persons all of whom had notice of the premises. Copies of the executions, &c., are made exhibits in the cause.

The bill prays that Paschall and all the Insurance Companies, and all the purchasers and holders of the stock be made parties and required to answer the bill—that the co porations be restrained and enjoined from transferring or permitting the transfer of the stocks, or any of them—that said stock may be transferred to them on the final hearing or the value paid, and for general relief.

To this bill a demurrer was filed and afterwards withdrawn. Wm. G. Pettus, one of the purchasers of stock, answered the bill for himself, and the other parties for themselves. Exceptions were filed to the answers of all except Pettus—and replication to that. The exceptions were sustained and there was a final decree in favor of complainants.

Upon motion for a rehearing, the Court set aside this decree, and gave leave to complainants to file an amended bill. In this amended bill, Ferguson as surviving partner of Taylor & Ferguson, varies the statement of the present holders under Sheriff's sale of the stock in question, but not in such a manner as to effect the question presented on the record. It is also avered that the holders have received certain dividends for which it is prayed that they should account.

To this original and amended bill the defendants demurred and assigned for causes of demurrer, 1st, that there was no equity in the bill; 2nd, that the bill was multifarious. This demurrer was sustained, the bill was dismissed, and complainant appealed to this Court.

The bill further shows that the shares of four of those Companies were sold on executions on 8th January, 1841, and that the shares of the two other Corporations were sold on other executions n different suits on the 26th January, 1841.

CROCKETT & BRIGGS AND GANTT, *for Appellant.*

The objections arising to the bill, presented by the demurrer are, two—

1. That the bill presents no case for the equitable interference of a Court of Chancery.

2. That the bill is multifarious.

*First.*—In support of the first position it is said that since a Court of Equity will not generally entertain a bill for the specific performance of an agreement to transfer stock, the present bill shows no equity.

In reply, it is submitted that tho' this be generally true, it is only when there is an adequate remedy at law that a court of equity refuses to interfere in such cases. If the chattel which is the subject of the contract have a peculiar value, (2 Story's Equity Jurisprudence, sec. 715, and other sections to 725 and cases there cited, 4 Ves. 497)—or if there be any other reason why redress cannot be had at law, the reason of the rule fails. In the present case the bill avers that Paschall is wholly insolvent. The complainant must pursue the stock, or be remediless. 1 Sim. & Stu., 590.

*Second.*—That the bill is not objectionable for multifariousness. See Story's Equity Pleadings, secs. 271, 278, 284, 285, 287, and 530 to 539, inclusive. Campbell vs. Macay, 1 Mylne & Craig, 617, & seq. Attorney General vs. Cradock 3 Mylne & Craig, 85. Turner vs. Robinson, 1 Sim. & Stu. 313. Gaines & Wife vs. Chew, Relfe and others, 2 Howard, 619.

SPALDING, *for Appellees.*

1. The bill is multifarious, containing several distinct causes of action which should not have been joined, and also joined sundry defendants who ought not to have been joined. Mitford's Pleadings, 181; Cooper's Pleadings, 182; 4 John. C. R., 199; Story's Equity Pleadings, secs. 271 to 278, 280, 281, 530, 538, 539; 6 John. C. R., 139; 18 Vesey, 72; 2 Vesey, 486; 4 Eng. Com. Chy. Rep., 68; 1 ib., 54; Calvert on Parties, 82, 83, (17 Law Libr. 48) 2 Sch. & Lef., 369.

The appellant did not, when the demurrer was sustained, ask leave to amend but chose to abide by his demurrer; and of course the bill had to be dismissed. See authorities above cited.

2. There is no equity in the bill; there being adequate remedy at law. Taylor might have sued the Insurance Companies and other corporations for the value of the stock, if they transferred it on their books to other persons, while it was Taylor's and they had notice of it. Perpetual Ins. Co. vs. Goodfellow, 9th vol. Mo. R., 149—and likewise, a suit would have lain against the several defendants who bought the stock at Sheriff's sale, if they bought with notice that Taylor was owner, and if the stock was transferred to them; for all such stock is personal property, declared to be such in most, if not all, the charters. Angell & Ames on Corporations, 468.

SCOTT, J., *delivered the opinion of the Court.*

If this bill is not multifarious, it is hard to conceive a case in which that objection would lie. The stock of various companies was sold at different times to several purchasers, and a claimant of the stock sold, seeks to litigate these distinct interests in one and the same suit. The multifariousness is two fold; first, as to the several companies, and secondly, as to the different purchasers of the stock. The principle of allowing a plaintiff to bring many defendants before the court, is, that he

claims one common right against all, and therefore the court allows him to bring all persons disputing that right before the court in one bill. The case of a bill against several parishoners for tithes, is an anomalous one. To overrule this demurrer, would be to abolish the rule against multifariousness. In the case of Brooks vs. Lord Whitworth, 2 Mad. 57, a trustee divided a tract of land into lots and sold them to six different purchasers; these with the incumbrancers on the estate sold, were made parties to a bill for a specific performance. The Chancellor in that case said, "The court is always averse to a multiplicity of suits, but certainly a defendant has a right to insist, that he is not bound to answer a bill containing several distinct and separate matters relating to individuals with whom he has no concern. A decisive objection to this bill is that the purchases of the different lots are made by distinct persons, each agreement being separate and distinct." In the case of Rayner vs. Julian, 2 Dick., Lord Kenyon puts this case: "Suppose an estate is sold in lots to different persons, a plaintiff could not include them all in one bill for a specific performance, for each party's case would be distinct and would depend upon its own peculiar circumstances, and there must have been a distinct bill on each contract."

There is weight in the objection, that there is no equity in the bill.— The transfer of the stock by Paschall to Ferguson was valid and effectual to convey it as between them. It passed all the interest both legal and equitable of Paschall to his transferee. The provision in charters or their bye-laws, which requires a registry on the books of the corporation of all transfers of stock, was not designed to prevent a conveyance of the stock so far as the immediate parties to it were concerned, from being effectual, but was for the benefit of the company. St. Louis Perpetual Ins. Co. vs. Goodfellow, 9 Mo. R., 155. In this case, the charter and bye-laws of one of the companies, a party to this suit, in relation to the registry of the transfer of stock, were under consideration and their object explained. It seems to be now settled, though it was once held otherwise, that in general a specific performance of a contract for the transfer of a stock will not be decreed. In this case the contract has already been executed. The case of Anderson vs. Biddle, 10 Mo. R., is not applicable. There, one had with the money of another, purchased stock in his own name, and the suit was brought amongst other things to compel the trustee to convey the stock to his *cestui que* trust.

The other Judges concurring, the decree will be affirmed.