B. W. McCANN and others *vs.* SOUTH NASHVILLE STREET RAILROAD COMPANY.

April Term, 1877.

SPECIFIC PERFORMANCE OF CONTINUOUS DUTY.—A court of chancery will not enforce the specific performance of continuous duties which involve personal labor and care; as, for example, the running of the cars of a street railroad along a particular street daily, "at such regular intervals as may be right and proper," whether the obligation of the railroad company be rested on contract or the provisions of its charter.

CORPORATION—ENFORCEMENT OF CHARTER DUTIES.—The remedy for the enforcement of a duty imposed upon a corporation by its charter is by *mandamus*, or by proceedings in the name of the state for a forfeiture of the charter.

*P. Lindsley*, for complainants.

*Thos. H. Malone*, for defendant.

THE CHANCELLOR :—On demurrer. The prayer of this bill is : " That your honor will decree a specific performance by said company (the defendant) of the contract sued on. That your honor will, by all necessary decrees, compel said company to replace their cars upon the entire length of said Carroll street or Fairfield branch, and so run the same daily, at such regular intervals as may be right and proper, under said contract, and under the charter of the company. That complainants, and all others who may choose to make

themselves parties complainant to this suit, be allowed to prove all damages sustained by them by reason of the breach of said company of said contract, and that they have judgment in their favor for the amount so proven.'"

The bill is filed by nine citizens, no one of whom is a party to the written agreement set out in the bill, unless signing another's name as his agent makes the agent a party, or, so far as appears by a direct averment of the fact, contributed either in money or property as provided by the contract. It may be that some of them did contribute, but all the specific donations mentioned were by other persons, and the general averment is not sustained by a single fact. The written proposition of the company was "that, when the branch road is built to the Lebanon pike, we will run it through Carroll street in crossing from that pike to Market street," provided the property holders on Carroll street will widen it, and raise an amount of money sufficient to build the road. The bill concedes that the road was built through Carroll street, and was being run in a fashion. It does not claim that a different contract was actually made from that contained in the written proposition and acceptance. What it does insist upon is that the contract guarantees to the complainants the right to have and enjoy the use of street cars from any given point on Carroll street to the end of the corporation line on the Lebanon pike. "The obvious, unmistakable meaning," the bill says, "and wording of the proposition of the company is that the branch should run," etc. The bill is not filed, therefore, to rectify the contract, but to enforce it according to the interpretation the complainants have chosen to put upon it. To a common man the proposition seems simply to be : If you will widen Carroll street, and furnish the money, we will build our road along that street. And it was so built. According to the complainants, the meaning is : We will, after the road is built, run the cars over it continuously, at regular intervals, through the street. This may be the duty of the company by its charter, but certainly no such con-

tract is embodied in the proposition. The company has merely agreed to build the road through the street, and this it has done.

The complainants are not entitled to a specific enforcement of the contract as claimed by them, 1st, because there is no such contract; 2d, because they are no parties to the contract actually made; and, 3d, because they have not contributed, either in land or money, under the proviso, so far as appears. Of course they cannot claim damages for the breach of a contract which never existed.

If, however, the contract had been actually such as claimed, a court of equity would have no power specifically to enforce it as prayed; nor could it enforce the specific performance of continuous duties required by the company's charter. The court has sometimes authorized a business to be conducted for a limited period at the expense of an estate, or of the parties. But it does not take upon itself to carry on a trade. For, to use the language of Lord Langdale, master of the rolls, " a most absurd thing would it be for this court to make an order whereby it undertakes to carry on a newspaper," or other business. *Tinkler* v. *Hindmarsh*, 2 Beav. 350. " Nothing is more clear than this," says Malins, V. C., " that this court will not undertake either the construction of a railway, the management of a brewery, the management of a colliery, or anything of the kind." *Wheatley* v. *Westminster Brymbo Coal Co.*, L. R. 9 Eq. 552. The Supreme Court of the United States has held that equity will not enforce the specific performance of duties which are continuous, and involve skill, personal labor, and judgment, such, for example, as grow out of a contract to deliver marble of certain kinds, and in blocks of particular size. *Marble Co.* v. *Ripley*, 10 Wall. 358. For the same reason I declined to specifically execute a contract to cultivate land in a particular way. *Starnes* v. *Newsom*, 1 Tenn. Ch. 239. In the *Powell Duffryn Steam Coal Co.* v. *Taff Vale R. W. Co.*, L. R. 9 Ch. App. 331, the plaintiff had a statutory right to use the defendant's

railway on fulfilling certain prerequisites, and filed the bill to enforce the right. The Vice-Chancellor refused to entertain the bill, and his action was affirmed on appeal. "When what is required," said James, L. J., "is not merely to restrain a party from doing an act of wrong, but to oblige him to do some continuous act involving labor and care, the court has never found its way to do this by injunction." In *Blackett* v. *Bates*, L. R. 1 Ch. App. 117, the suit involved the right of the complainant to run carriages over the railway of the defendant, under an award. Lord Cranworth declared that the court had no means of enforcing the performance of daily duties for a long period. And it has been repeatedly held that the specific enforcement of an agreement to build a railroad cannot be decreed. *Heathcote* v. *North Stafford R. W. Co.*, 20 L. J. (N. S.) 82; *Ross* v. *Union Pacific R. R. Co.*, 1 Woolw. 26; *Fallon* v. *Railroad Co.*, 1 Dill. 121. And see *Port Clinton, etc., R. R. Co.* v. *Cleveland, etc., R. R. Co.*, 13 Ohio, 544. The remedy for the enforcement of a duty imposed upon a corporation by its charter is not by bill in equity, but by *mandamus*, or proceedings in the name of the state for the forfeiture of the charter. *Union Pacific R. R. Co.* v. *Hall*, 91 U. S. 343; *People* v. *Albany & Vermont R. R. Co.*, 24 N. Y. 267.

The demurrer is well taken, and the bill must be dismissed.