Fred A. Nott, Administrator De Bonis Non with the Will Annexed of the Estate of Froila R. Artz, Deceased, Appellee, v. Heitman Trust Company, Executor of the Last Will and Testament of Mattie E. Artz, Deceased, Appellant.

Gen. No. 9,048.

Opinion filed May 15, 1936.

HERSHENSON & HERSHENSON and JAMES B. McKEON, all of Chicago, for appellant.

SEYSTER, FEARER & FEARER, of Oregon, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

The complaint in this case, as amended, alleged the appointment of the plaintiff as administrator *de bonis non* with the will annexed of the estate of Froila R. Artz, who died testate on June 14, 1914, the admission of his will to probate, the appointment and qualification of Mattie E. Artz, surviving widow of the deceased, as executrix, the filing of an inventory by her, the appointment of appraisers, the allotment of a widow's award in the sum of $2,000, the payment of the general pecuniary legacies, together with the payment of all the claims against the estate and costs of administration and the filing and approval of a final report on or about December 15, 1915. The complaint, as amended, then alleged that the said Mattie E. Artz, as executrix, after the making of her final report, was possessed of an enlarged life estate of all the real and personal property set forth in the inventory returned by her as such executrix, except certain notes and bonds therein mentioned which she had collected and accounted for in her final report. It was then alleged that the fair, cash, market value of the real estate at the date of the death of Froila R. Artz was $20,870 and the value of the personal property was $34,282.82; that the real estate, except certain property in the City of Oregon, Illinois, occupied by Mr. and Mrs. Artz as a homestead, was sold by the surviving widow, who received therefor the sum of about $31,041.25; that on January 29, 1934, Mattie E. Artz died testate; that her

will was duly admitted to probate and the defendant was duly appointed and qualified as executor of her estate, and that as such executor the defendant filed in the county court an inventory which purports to inventory the property of the estate of Mattie E. Artz, but that all the assets there listed except those designated ''goods and chattels'' are the property of the plaintiff to be distributed and divided as provided by the last will and testament of Froila R. Artz, deceased.

The complaint as amended then avers that at the time of the death of her husband, the said Mattie E. Artz was not the owner of or possessed of any real or personal estate; that Froila R. Artz was a veteran of the Civil War and after his death his widow received a pension; that at the time of her husband's death, she and her husband resided in certain described property in the City of Oregon and that thereafter she continued to reside there until her death; that all of the property, real and personal, of Froila R. Artz and the proceeds coming from the sale thereof was not all expended or used by Mattie E. Artz for her support, comfort, needs and desires, but the greater part thereof remained unexpended and should be turned over to the plaintiff by the defendant to be distributed under the provisions of the last will and testament of Froila R. Artz, deceased. The complaint as amended prayed a discovery of all the transactions involving the property of the estate of Froila R. Artz, deceased, during the lifetime of Mattie E. Artz; that the amount of the property to which the plaintiff is entitled be ascertained by the court and that the defendant be required to account to the plaintiff and deliver to him all such property or the value thereof. Attached to the complaint as amended were copies of the will of Froila R. Artz, of the final account of Mattie E. Artz as executrix thereof, of the inventory which she made as such executrix, together with copies of the last will and

testament of Mattie E. Artz and of the inventory made by the defendant as her executor.

After a motion to dismiss was denied, the defendant answered admitting many of the allegations of the complaint as amended, but denied that any property which it had inventoried as executor of the estate of Mattie E. Artz belongs to the plaintiff and denied that the plaintiff is entitled to an accounting. By its answer the defendant insisted that under the provisions of the last will of Froila R. Artz she, the said Mattie E. Artz, took all the property which she received from her husband as an absolute bequest with the right and power to dispose of the same. After the issues were made up, the cause was referred to the master in chancery, who took the evidence and recommended a decree in accordance with the prayer of the complaint as amended and upon a hearing before the chancellor the report of the master was in most respects approved and a decree rendered finding that Froila R. Artz, under the provisions of his will, gave to his wife Mattie E. Artz an enlarged life estate in all of his property, with power of sale, for her support, comfort, needs and desires, she being the sole judge of what was necessary for her support, comfort, needs and desires. The decree further found that from and after the death of Mattie E. Artz, whatever personal property and the proceeds of real estate which formerly belonged to Froila R. Artz but which she had sold but which remained unexpended, should be divided and distributed in the proportions and to the beneficiaries named in paragraph four of the will of Froila R. Artz; that the attempt by Mattie E. Artz, by her last will to bequeath to various persons named in her will, the personal property and proceeds of real estate sold by her, in which she had an enlarged life estate and which remained unexpended at her death, was not authorized by the will of Froila R. Artz and said bequests were

therefore void and of no effect. The decree further found that Mattie E. Artz was never possessed of any real or personal property in her own right, except her widow's award allowed out of her husband's estate, together with the enlarged life estate in the property of her husband given to her under his will and that after the death of Froila R. Artz and after his widow came into possession of his estate, she changed some of the investments and took some in her own name, but that the greater portion of the property of her deceased husband remained after her death and came into the possession of the defendant, as executor of her estate. The decree then directed the defendant to deliver said property to the plaintiff as administrator *de bonis non* with the will annexed of the estate of Froila R. Artz, deceased, within thirty days from the entry of the decree. To reverse this decree the defendant below has prosecuted this appeal.

The evidence discloses that Froila R. Artz died testate on January 27, 1911; that his will was duly admitted to probate and by it he nominated his wife executrix and directed that she serve without being required to give bond. By his will he provided that his debts and funeral expenses should be paid as soon as possible after his death and directed his executrix to pay Rufus B. Artz, Orlando W. Artz and Charles W. Artz, his brothers, each the sum of $1,000 and to his niece, Helen Artz, the sum of $500, within two years after his death. The third and fourth paragraphs of the will are as follows, viz.:

"Paragraph 3. After making the payments mentioned in paragraphs 1 and 2 of this my last will and testament, I give, devise and bequeath all the rest, residue and remainder of my property of every kind and nature, to my beloved wife, Mattie E. Artz, for and during the term of her natural life, and I will and direct and authorize my said wife, Mattie E. Artz, to sell and transfer any and all of my property, whether

real, personal or mixed or any part thereof, and change the form of my investments if in her opinion such sale or change of investment would be of benefit to her and my estate, she being the sole judge in that respect, either at public or private sale, and to vest the title in the purchaser or purchasers by deed or assignment executed by herself. And I further will and direct that in the event of the income from all my property should be insufficient for the support, comfort, needs and desires of my said wife, then in that event my said wife is directed and authorized to use and expend the principal of my personal property or any part thereof and the proceeds arising from the sale of any real estate owned by me at the time of my death, or any part thereof for her support, comfort, needs and desires. And I further will and direct that my said wife shall not be required in any manner to account for the proceeds of the sale of lands or for the principal of my personal property that shall be used by her for her support, comfort, needs and desires, but she shall have the right to judge for herself how such money shall be expended and the manner in which she shall expend the same, and the amount she shall expend for her support, comfort, needs and desires shall not be questioned by any one, but if any of my personal property or any of the proceeds of land sold by her shall remain unexpended at her death, then I direct that such unexpended personal property or proceeds of lands sold shall be divided among the same persons and in the same proportions and in the same manner as I have hereinafter directed my real estate unsold at the death of my said wife to be divided.

"Paragraph 4. It is my will and I so devise that at the death of my said wife, Mattie E. Artz, so much of the real estate of which I may die seized and possessed as shall at the death of my said wife remain unsold, shall be divided as follows: To my brothers, Rufus B. Artz, Orlando W. Artz and Charles W. Artz,

each the undivided one-fifth (1/5) part thereof, and to my sisters-in-law, Jennie McCall and Millicent Scadin, each the undivided one-fifth (1/5) part thereof.''

The evidence further discloses that prior to the death of her husband Mrs. Artz owned no property; that his estate consisted of the property in which they lived in the City of Oregon, together with other city property and a farm of 205 acres, and also stocks, bonds, accounts, notes, secured and unsecured, all of his estate being of the value of at least $50,000. They had no children and after the death of Mr. Artz, Mrs. Artz continued to live in the homestead property until her death. She lived economically and modestly. She was a member of the Presbyterian church and her social activities were few. She had two sisters, Millicent Scadin and Jennie McCall, who were the residuary legatees under her will. The evidence further discloses that the household goods and chattels inventoried by her, as executrix, were appraised at $1,026.25. Her widow's award was fixed at $2,000 and upon this she selected the goods and chattels at their appraised value and her report shows she paid herself the balance of $973.75 in cash. Prior to the death of Mattie E. Artz, she sold all the real estate except the homestead and received therefor the sum of $31,041.25. She also collected the notes, sold some of the bonds and securities, and reinvested the proceeds derived therefrom and during her widowhood expended very little if any of the corpus of the estate which she received from her husband. Among other stocks and bonds which Mrs. Artz inventoried in her husband's estate were 50 shares of the capital stock of the Illinois Central Railroad Company and 10 shares of the capital stock of Deere and Company registered in the name of F. R. Artz. The stock in Deere and Company was preferred stock and of the par value of $100. In 1931 Mrs. Artz exchanged this certificate for another one,

at the request of the company, receiving in lieu of the old certificate a new one dated January 27, 1931, evidencing that F. R. Artz was the owner of 50 shares of the preferred stock of the company of the par value of $20 per share. At the time of Mrs. Artz's death, she had possession of these certificates and they were inventoried by appellant as a part of her estate. And appellant also inventoried as her property the stocks, bonds and notes which she acquired during her widowhood with the proceeds derived by her from the sale of the real and personal property which came into her possession after her husband's death. The evidence further discloses that Mrs. Artz became a depositor in the Oregon State Savings Bank on June 17, 1914, and continued to do business with that bank until it closed in January, 1933. She received dividend checks from various companies, which were made out to her as executrix of the estate of Froila R. Artz, deceased, and she so indorsed and cashed them up until the time of her death, which occurred on January 29, 1934.

Counsel for appellant state that they did not contend in the lower court and do not insist here that the will of Froila R. Artz vested in Mattie E. Artz a fee or that under its provisions Mattie E. Artz had the right to dispose by her last will of the unexpended property belonging to Froila R. Artz; that their contention is that the plaintiff is not a proper party plaintiff and has no right to sue the personal representative of a deceased executrix; that the estate of Froila R. Artz was fully administered and that upon the termination of the life estate the remaindermen were entitled to possession of the unsold real estate, the personal property and any of the proceeds of the land which was sold by the life tenant which remained unexpended at her death without the appointment of appellee as administrator *de bonis non* and without any action upon his part. Counsel for appellant further insists that the

will of Froila R. Artz created a vested remainder and that upon his death a present, vested interest passed to certain definite named persons whose right of enjoyment was postponed until after the death of the life tenant.

In order to sustain the decree of the chancellor, counsel for appellee insists that this is a suit for discovery and account and that the evidence discloses that the estate of Froila R. Artz had not been fully administered by Mattie E. Artz at the time of her death; that upon the death of Mattie E. Artz, it became necessary under the provisions of the will of Froila R. Artz, deceased, to divide what remained to the persons entitled thereto; that in order to do this an administrator *de bonis non* with the will annexed was properly appointed and appellee as such administrator was the proper party plaintiff.

The only report ever filed in the county court by Mrs. Artz states that it is a report of her acts and doings as executrix from her appointment to December 16, 1915. It disclosed that she had collected $10,084.75 and had paid certain claims, specific legacies, costs and attorneys' fees, all amounting to $6,933, leaving, as stated in the report, a "balance due" of $3,151.75. There is nothing in this report which informs the court that she has completed her duties as executrix nor does she ask to be discharged. The report discloses that the executrix signed and swore to it on March 10, 1916, and on the same day it was filed by the county clerk and approved by the county judge. No order was ever entered by the county court closing this estate and no order was ever entered discharging Mattie E. Artz as executrix. The statute (chapter 3, sec. 112, Hurd's Revised Statutes 1917, in force at the time in question) then provided that "No final settlement shall be made and approved by the court, unless

the heirs of the decedent have been notified thereof, in such manner as the court may direct.'' This was not done by Mattie E. Artz and the report which she filed was a current report only and not a final one, and it does not purport to be a final report. Furthermore, the evidence is that Mrs. Artz continued long after to receive checks as executrix and so indorsed them and continued to cash them up until the time of her death. The undisputed evidence shows that the estate of Froila R. Artz was not completely administered at the time of Mrs. Artz's death. There remained in her hands the several certificates evidencing the ownership of 50 shares of the capital stock of Deere and Company and 50 shares of the capital stock of the Illinois Central Railroad Company, all issued in the name of F. R. Artz. There was also in her hands stocks, bonds and notes which had been purchased by her with the proceeds derived by her from the collection of notes and the sales of securities and land which came into her possession at the time of the death of her husband. The total value of these, according to the inventory, is $21,005.74. The object sought by the complaint herein is a discovery and an accounting of the assets of the estate of Froila R. Artz, which had come into the hands of Mattie E. Artz, either as executrix or as life tenant. Until she was discharged as executrix she could not be said to have held the property as life tenant, but irrespective of the capacity in which she held it, the fact is that under the provisions of her will she sought to dispose of it and appellant, as her executor, inventoried it as her property. The law is that what remains after a life estate is ended is no part of the life tenant's estate, *Kinney v. Keplinger*, 172 Ill. 449, and as the will of Froila R. Artz provided that his unexpended estate should be distributed as provided by his will, we know of no more satisfactory

way for this to be brought about than by appellee, acting under the supervision of the probate court of Ogle county. We are clearly of the opinion that appellee, under the facts as shown by this record, properly instituted this proceeding.

Counsel for appellant, however, cite the case of *Miller v. Miller,* 232 Ill. App. 86, and insist that under the holding in that case the distribution to Mattie E. Artz as life tenant was a distribution to the remaindermen mentioned in section 4 of the Froila R. Artz will and that it must necessarily follow that such remaindermen must seek their legacies or devises from the estate of Mattie E. Artz, the life tenant. The *Miller* case was a proceeding brought in the county court under sections 81 and 82 of the Administration Act by the executors of the last will of Samuel S. Miller, deceased, against Fred S. Miller, executor of the estate of Mary C. Miller, deceased, to procure possession of certain personal property. In that case it appeared that the life tenant (Mary C. Miller) had receipted in detail for the property in which she had a life estate and the final report had been approved, but the executors of the estate of Samuel S. Miller, deceased, had not been discharged. Upon the death of Mary C. Miller, her executor, Fred S. Miller, inventoried all the property which she had receipted for or property substituted for it and in the proceeding had in the county court for possession he answered that he was holding such property subject to the trust interest therein of the children of Samuel S. Miller. The court held that a distribution to the life tenant was a distribution to the remaindermen. In the *Miller* case the property was definite and fixed and the executor of the life tenant's estate did not claim it as part of her estate but said he was holding it in trust for the remaindermen while in the instant case the remaindermen could not obtain their interest against the life

tenant's estate, as it is not definitely shown what property remained, and what it consisted of and here the executor of the life tenant insists that he is holding it only as executor of her estate. Furthermore, in the instant case the Froila R. Artz estate was not closed as required by law, but the life tenant continued to act as executrix until the time of her death. There was no distribution to her as life tenant, and if not there was no distribution to the remaindermen.

Irrespective of what is said in *Miller v. Miller, supra,* our Supreme Court has recognized that a complaint similar to the instant one is proper. *Rock Island Bank & Trust Co. v. Rhoads,* 353 Ill. 131. It appeared in that case that James F. Robinson died testate in 1902. The provisions of his will were in some respects similar to the provisions of the will of Froila R. Artz. His wife Mary E. Robinson was appointed executrix and she continued to serve until her death in 1929. Her will was admitted to probate and her brother was appointed executor thereof. The will of James F. Robinson provided that after the death of his wife, the Central Trust and Savings Bank, predecessor to and later the Rock Island Bank and Trust Company, should become executor. This bank as executor made a demand upon Rhoads individually and as executor of the last will of Mary E. Robinson for an accounting and for certain property as the corpus of the estate of James F. Robinson remaining at the time of the death of Mary E. Robinson, the life tenant. Certain property was turned over by Rhoads to the bank, but Rhoads denied that the bank was entitled to any accounting and thereupon the bank instituted suit against Rhoads individually and as executor, praying for a discovery of the books, records and accounts covering the period of the life tenancy in order to ascertain the amount of the corpus to which the complainant bank as executor of the will

of James F. Robinson was entitled. The defendants answered denying the right to an accounting and alleging that the corpus of the estate of James F. Robinson had been theretofore accounted for and turned over to the bank. That such a proceeding was proper was not questioned and the court construed the will of James F. Robinson and held, among other things, that where a testator gave his wife a life estate in all of his real and personal property, with full power to dispose of the same if necessary for her comfort and satisfaction in life, that the wife thereby acquired no power to dispose of the residue of the corpus but that whatever remained of the principal of the husband's estate would go to the remaindermen. Counsel for appellant seek to distinguish the instant case from the *Rhoads* case in that the will of the testator in the *Rhoads* case appointed the bank his executor after the death of his wife. It is true that the will of Froila R. Artz did not nominate anyone to act as his executor after the death of his wife, but our statute, ch. 3, sec. 37 [¶ 38], Ill. State Bar Stats. 1935, expressly provides that if there is anything remaining to be performed in the execution of the will, the county court shall grant letters of administration with the will annexed to administer the estate of the deceased not already administered. The evidence in the instant case discloses that there is property of which Froila R. Artz died the owner of, which has never been administered and appellee was therefore properly appointed administrator *de bonis non* with the will annexed. The evidence is further that appellant is in possession of this unadministered property. Appellant, as executor of Mattie E. Artz, does not succeed to the estate which she was administering at the time of her death. *Kinney v. Keplinger,* 172 Ill. 449. And as there are unadministered assets in the Froila R. Artz estate, it is the duty of his administrator *de bonis non* to ascertain just what the unadministered assets

consist of, reduce them into his possession and then distribute them as provided by his will and make a proper final settlement of his estate as provided by law, and we know of no more appropriate proceeding in which this can be done than by filing a complaint in equity as was done in the instant case.

"The existence of a remedy at law does not deprive equity of jurisdiction unless such remedy be adequate. That is, it must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." *McGinniss v. First Nat. Bank,* 214 Ill. App. 295.

The decree of the chancellor is affirmed.

*Decree affirmed.*